Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Kathryn Penick*
TX Bar No. 24116890
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
kpenick@mybackwages.com

*Pro hac vice application forthcoming*

*Attorneys for Helton and the Hourly Employees*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MELISSA HELTON, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiff<br><br>v.<br><br>PREMIER MAGNESIA, LLC,<br><br>Defendant. | Case No. _____<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);<br><br>(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016).<br><br>(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>(4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and<br><br>(5) Failure to Timely Pay All Wages Due and Owing Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.020-050). |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Melissa Helton (Helton) brings this class and collective action to recover unpaid wages and other damages from Premier Magnesia, LLC (Premier) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2.      Premier employed Helton as one of its Hourly Employees (defined below).

3.      Premier pays Helton and the other Hourly Employees by the hour.

4.      Helton and the other Hourly Employees regularly work more than 40 hours in a workweek.

5.      However, Premier does not pay Helton and the other Hourly Employees for all their hours worked, including overtime hours.

6.      Rather, Premier requires them to put on safety gear necessary to safely perform job duties "off the clock," on Premier's premises, prior the start of their shifts.

7.      Likewise, Premier requires Helton and the other Hourly Employees to remove and store safety gear and other equipment and complete paperwork "off the clock" following the end of their shifts (¶¶ 6 and 7 collectively Premier's "pre/post shift off the clock policy").

8.      But Premier does not pay Helton and the other Hourly Employees for hours worked before and after their shifts.

9.      Premier's pre/post shift off the clock policy violates the FLSA and Nevada law by depriving Helton and the other Hourly Employees of wages, including overtime wages, for all hours worked.

10.     Likewise, Premier's pre/post shift off the clock policy violates Nevada Law by depriving Helton and the other Hourly Employees of timely payment of earned wages for all hours worked upon termination of their employment.

11.     Additionally, Premier fails to pay Helton and the other Hourly Employees overtime at the required premium rates.

12.     Instead, Premier pays Helton and the other Hourly Employees non-discretionary bonuses, calculated at least in part based on the number of hours worked, that it excludes from their regular rates of pay for overtime purposes (Premier's "bonus pay scheme").

13.     Premier's bonus pay scheme violates the FLSA and Nevada law by depriving Helton and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

14.     Likewise, Premier's bonus pay scheme violates Nevada law by depriving Helton and the other Hourly Employees of timely payment of earned wages for all hours worked, including overtime hours, upon termination of their employment.

### JURISDICTION & VENUE

15.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

16.     This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Premier because of its substantial contacts with Nevada, including being registered to do business in Nevada, owning and operating a magnesia mine and processing facility in Nevada, and employing hundreds of employees in Nevada.

18.     Venue is proper because a substantial part of the events or omissions giving rise to this action occurred in Nye County, which is in this District and the informal Southern Division. *See* 28 U.S.C. § 1391(b)(2).

19.     Specifically, Premier employed Helton and the other Hourly Employees under its pre/post shift off the clock policy and bonus pay scheme in its Nye County facility.

### PARTIES

20.     Premier employed Helton from approximately March 2024 until November 2024.

21.     Premier classified Helton as non-exempt and paid her by the hour.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

22.    Premier subjected Helton to its pre/post shift off the clock policy and bonus pay scheme.

23.    Helton's written consent is attached as **Exhibit 1**.

24.    Helton brings this class and collective action on behalf of herself and similarly situated Premier employees.

25.    The putative FLSA collective is defined as:

> **All hourly Premier employees in Nevada who worked during the past 3 years through final resolution of this action ("FLSA Collective Members").**

26.    Helton also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

27.    The putative Nevada class is defined as:

> **All hourly Premier employees who worked in Nevada during the past 4 years through final resolution of this action ("Nevada Class Members").**

28.    The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

29.    Premier is a Delaware limited liability company headquartered in Waynesville, North Carolina.

30.    Premier may be served with process by serving its registered agent: **Corporation Service Company, 112 North Curry Street, Carson City, Nevada 89703**.

## FLSA COVERAGE

31.    At all relevant times, Premier has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

32.    At all relevant times, Premier has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

33.    At all relevant times, Premier has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as personal protective equipment, tools, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

34.     At all relevant times, Premier has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

35.     At all relevant times, Helton and the other Hourly Employees have been Premier's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

36.     At all relevant times, Helton and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

### FACTS

37.     Premier touts itself as "a global market leader in magnesia-based products and solutions for dozens of applications [that] … [f]or over 50 years, ha[s] owned and operated a magnesia mine and processing plant located in Gabbs, Nevada that will continue to offer the only domestically-mined source of magnesia ore in the United States."[1]

38.     To meet its business objectives, Premier hires workers, like Helton and the other Hourly Employees.

39.     While exact job titles and duties may differ, Helton and the other Hourly Employees are all subject to Premier's same or similar illegal policies—its pre/post shift off the clock policy, rounding policy, and bonus pay scheme—while performing the same or similar work.

40.     For example, Helton worked for Premier as a floater/laborer from approximately March 2024 until November 2024.

41.     Helton's job duties included raising rocks, cleaning and scaling bulldozers and other equipment, haul products as well as handle loads from hoppers.

42.     Helton's job duties likewise included donning and doffing safety gear and storing tools and equipment, on Premier's premises, "off the clock," before and after her scheduled shifts.

---

[1] https://www.premiermagnesia.com/about-premier-magnesia/ (last visited December 4, 2025).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

43.     Premier paid Helton by the hour.

44.     Premier paid Helton approximately $31.71 an hour.

45.     Helton generally worked 4+ days a week for approximately 12 hours a day "on the clock" (48 hours a workweek).

46.     Likewise, the other Hourly Employees generally work approximately 4+ days a week for approximately 12 hours a day "on the clock" (48 hours a week).

47.     Premier records Helton's and the other Hourly Employees' "on the clock" hours through the timekeeping system it selects and controls.

48.     But throughout their employment, Premier has not paid Helton and the other Hourly Employees for all their hours worked.

49.     Instead, Premier subjects Helton and the other Hourly Employees to its pre/post shift off the clock pay scheme.

50.     For example, Premier required Helton to put on protective clothing and safety gear (including hard hat, reflective gear, ear protection, steel toed boots, safety glasses, gloves), fundamentally necessary to performing her job, prior to her shifts, on Premier's premises "off the clock," and without compensation.

51.     This took Helton approximately 20 minutes each workday.

52.     Helton could not perform her job duties in accordance with Premier's policies, procedures, and expectations without this safety gear and equipment.

53.     Helton could not safely perform her job duties in accordance with Premier's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

54.     Indeed, much of the safety gear Helton must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*.

55.     The donning of safety gear are integral and indispensable work duties for Helton fundamentally intertwined with her other laborer job duties.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

56.    Likewise, Premier required Helton to remove and store her safety gear, clean up her workspace, drop off equipment at different worksites, unload equipment and vehicles, and prepare for the next day's assignments after her shifts, "off the clock," while still on Premier's premises and without compensation.

57.    This took Helton approximately 30 minutes each workday.

58.    Helton could not perform her job duties in accordance with Premier's policies, procedures, and expectations without removing and storing her safety gear, cleaning up her workspace, dropping off equipment at different worksites, unloading equipment and vehicles, and preparing for the next day's assignments each workday.

59.    Removing and storing her safety gear, cleaning up her workspace, dropping off equipment at different worksites, unloading equipment and vehicles, and preparing for the next day's assignments were therefore integral and indispensable work duties for Helton.

60.    But under its pre/post shift off the clock policy, Premier does not compensate Helton for the same.

61.    Thus, Premier fails to pay Helton wages for all hours worked, including overtime wages for all overtime hours worked, in violation of the FLSA and Nevada Law.

62.    Helton and the other Hourly Employees perform their jobs under Premier's supervision and use materials, equipment, and technology Premier approves and supplies.

63.    Premier requires Helton and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

64.    At the end of each pay period, Helton and the other Hourly Employees receive wages from Premier that are determined by common systems and methods that Premier selects and controls.

65.    But, just as with Helton, Premier fails to pay the other Hourly Employees for all their hours worked.

66.    Indeed, Premier subjects the other Hourly Employees to its pre/post shift off the clock policy.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

67.    Specifically, like Helton, Premier requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, reflective gear, ear protection, steel toed boots, safety glasses, gloves, dust mask), prior to their scheduled shifts, on Premier's premises "off the clock," and without compensation.

68.    As with Helton, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq.*

69.    And Premier requires the other Hourly Employees to remove and store their safety gear, clean up their workspace, drop off equipment at different worksites, unload equipment and vehicles, and prepare for the next day's assignments, on Premier's premises, "off the clock" and without compensation.

70.    But, like Helton, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their scheduled shifts.

71.    And, just as with Helton, Premier does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock."

72.    And like Helton, these job duties take the other Hourly Employees approximately 50 minutes each workday.

73.    Premier fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that it does not want performed.

74.    And Premier knows, should know, or recklessly disregards whether Helton and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

75.    Thus, Premier requires, requests, suffers, or permits Helton and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

76.    Despite accepting the benefits, Premier does not pay Helton and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

77.    Thus, under Premier's pre/post shift off the clock policy, Helton and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of the FLSA and Nevada law.

78.    Further, throughout their employment, Premier paid Helton and the other Hourly Employees according to its bonus pay scheme.

79.    Specifically, Premier pays the Hourly Employees non-discretionary bonuses, such as attendance bonuses that is not formulated to approximate the expenses incurred by its Hourly Employees.

80.    For example, during the pay period ending September 8, 2024, Premier paid Helton a $221 attendance bonus:

| Earnings | | | | |
|---|---|---|---|---|
| Pay Type | Hours | Pay Rate | Current | YTD |
| | | | | $1,519.00 |
| **Earnings** | | | | |
| Pay Type | Hours | Pay Rate | Current | YTD |
| Attendance Rewa | 0.000000 | $0.0000 | $0.00 | $1,298.00 |
| Bonus & Comm | | | $250.00 | $500.00 |
| Boot Allowance | 0.000000 | $0.0000 | $0.00 | $250.00 |
| Holiday | 0.000000 | $0.0000 | $0.00 | $701.28 |
| Holiday 1st B | 0.000000 | $0.0000 | $0.00 | $712.92 |
| Holiday over B | 0.000000 | $0.0000 | $0.00 | $594.10 |
| Overtime | 0.000000 | $0.0000 | $0.00 | $6,412.62 |
| Regular Pay | 0.000000 | $0.0000 | $0.00 | $28,755.59 |
| Travel Reimb | 0.000000 | $0.0000 | $0.00 | $81.74 |
| Total Hours 0.000000 | | | | |

81.    Additionally, Premier paid her a $250 "Bonus & Comm":

| Earnings | | | | |
|---|---|---|---|---|
| Pay Type | Hours | Pay Rate | Current | YTD |
| Attendance Rewa | 0.000000 | $0.0000 | $0.00 | $1,298.00 |
| Bonus & Comm | | | $250.00 | $500.00 |
| Boot Allowance | 0.000000 | $0.0000 | $0.00 | $250.00 |
| Holiday | 0.000000 | $0.0000 | $0.00 | $701.28 |
| Holiday 1st B | 0.000000 | $0.0000 | $0.00 | $712.92 |
| Holiday over B | 0.000000 | $0.0000 | $0.00 | $594.10 |
| Overtime | 0.000000 | $0.0000 | $0.00 | $6,412.62 |
| Regular Pay | 0.000000 | $0.0000 | $0.00 | $28,755.59 |
| Travel Reimb | 0.000000 | $0.0000 | $0.00 | $81.74 |
| Total Hours 0.000000 | | | | |

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

82. But Premier excluded these non-discretionary bonuses from Helton's regular rate of pay for overtime purposes during the September 8, 2024 pay period (and all other pay periods):



83. As a result, Premier fails to pay Helton and the other Hourly Employees overtime wages at a rate not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked over 40 a workweek, in violation of the FLSA and Nevada law.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

84. Helton brings her claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to FED. R. CIV. P. 23.

85. Like Helton, the other Hourly Employees are victimized by Premier's pre/post shift off the clock policy and/or bonus pay scheme.

86. Other Hourly Employees worked with Helton and indicated they were paid in the same manner, performed similar work, and were subject to Premier's same pre/post shift off the clock policy and bonus pay scheme.

87. Based on her experiences with Premier, Helton is aware Premier's pre/post shift off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

88. The Hourly Employees are similarly situated in the most relevant respects.

- 10 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

89.    Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

90.    Rather, the Hourly Employees are held together by Premier's pre/post shift off the clock policy and bonus pay scheme, which systematically deprive Helton and the other Hourly Employees of wages, including overtime wages, for all hours worked, including hours in excess of 40 in a workweek.

91.    Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

92.    Premier's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

93.    The Hourly Employees are denied wages and overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

94.    Premier's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

95.    The back wages owed to Helton and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

96.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Premier's records, and there is no detraction from the common nucleus of liability facts.

97.    Therefore, the issue of damages does not preclude class or collective treatment.

98.    Helton' experiences are therefore typical of the experiences of the other Hourly Employees.

99.    Helton has no interest contrary to or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

- 11 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

100. Helton has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Nevada law.

101. Helton and her counsel will fairly and adequately protect the interests of the other Hourly Employees.

102. Helton retained counsel with significant experience in complex class and collective action litigation.

103. A class and collective action is superior to other available means for fair and efficient adjudication of this action.

104. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Premier will reap the unjust benefits of violating the FLSA and Nevada law.

105. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

106. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Premier.

107. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

108. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

109. Among the common questions of law and fact are:

a. Whether Premier's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

b. Whether Premier's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

c. Whether Premier's pre/post shift off the clock policy deprived the Hourly Employees of earned wages upon termination of employment;

- 12 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

     d.      Whether Premier's bonus pay scheme deprived the Hourly Employees of overtime at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

     e.      Whether Premier's bonus pay scheme deprived the Hourly Employees of earned overtime wages at the required rates for all hours worked in excess of 40 in a workweek;

     f.      Whether Premier's decision not to pay the Hourly Employees all "straight time" and overtime wages due was made in good faith; and

     g.      Whether Premier's violations were willful?

110.    Premier's pre/post shift off the clock policy and bonus pay scheme deprived Helton and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

111.    There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112.    The Hourly Employees are known to Premier and can be readily identified and located through Premier's business and personnel records.

**PREMIER'S VIOLATIONS WERE WILLFUL**

113.    Premier knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

114.    Premier knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

115.    Premier knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

116.     Premier knew it paid the Hourly Employees according to its pre/post shift off the clock policy and/or bonus pay scheme.

117.     Premier knew it had a duty to ensure its Hourly Employees were not performing work "off the clock," without pay.

118.     Premier knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather, prepare, and store tools and equipment, and wash-up "off the clock."

119.     Premier knew it controlled the Hourly Employees' work procedures.

120.     Premier knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

121.     Premier knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

122.     Premier knew its Hourly Employees routinely performed this daily, required "off the clock" work for Premier's benefit.

123.     In other words, Premier knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing tools and equipment, washing-up) "off the clock" and without compensation.

124.     Premier knew its pre/post shift off the clock policy and bonus pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours, at the required rates.

125.     Premier knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

126.     Premier knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy and bonus pay scheme that systematically deprived the Hourly Employees of earned straight time and overtime wages for their hours worked in excess of 40 in a workweek, in violation of the FLSA and Nevada law.

### COUNT I
#### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
#### (FLSA COLLECTIVE)

127.    Helton brings her FLSA claim as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

128.    Premier violated, and is violating, the FLSA by employing non-exempt employees (Helton and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

129.    Premier's unlawful conduct harmed Helton and the other FLSA Collective Members by depriving them of overtime wages they are owed.

130.    Accordingly, Premier owes Helton and the other FLSA Collective Members the difference between the rate actually paid and the overtime wages actually earned.

131.    Because Premier knew, or showed reckless disregard for whether, its pre/post shift off the clock policy and/or bonus pay scheme violated the FLSA, Premier owes Helton and the other FLSA Collective Members these wages for at least the past 3 years.

132.    Premier is also liable to Helton and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

133.    Finally, Helton and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

### COUNT II
#### FAILURE TO PAY FOR ALL HOURS WORKED
#### (NEVADA CLASS MEMBERS)

134.    Helton brings her claim for failure to pay for all hours worked as a class action on behalf of herself and the other Nevada Class Members under Nevada law pursuant to FED. R. CIV. P. 23.

135.    Helton has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

136.    At all relevant times, Premier was subject to Nevada law because it was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

137.    At all relevant times, Premier employed Helton and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

138.    NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

139.    Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

140.    Premier failed to compensate Helton and the other Nevada Class Members for all hours worked, as described in this Complaint.

141.    Accordingly, Helton "bring[s] a civil action to recover the difference between the amount paid to [Helton and the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

142.    As noted, Premier did not compensate Helton and the other Nevada Class Members for integral and indispensable work before and after their shifts, performed under Premier's direction and control and on Premier's premises.

143.    Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

144.    Helton and the other Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Premier's company-wide policies and practices.

145.    As a direct and proximate result, Helton and the other Nevada Class Members have suffered, and continue to suffer, substantial damages.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

146.     Premier regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Helton and the Nevada Class Members.

147.     Through this unlawful course of conduct, Premier has deprived and continues to deprive Helton and the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

148.     Premier's actions were (and are) willfully oppressive, fraudulent and malicious, entitling Helton and the Nevada Class Members to punitive damages.

149.     Premier's violations were intentional.

150.     In accordance with NRS 608.140, demand has been made to Premier for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

151.     Accordingly, Helton and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* Nev. Rev. Stat. § 608.005 *et seq.*

### COUNT III
### FAILURE TO PAY MINIMUM WAGES
### (NEVADA CLASS MEMBERS)

152.     Helton brings her failure to pay minimum wages claim as a class action on behalf of herself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

153.     Helton has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

154.     At all relevant times, Premier was subject to Nevada law because Premier was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

155.     At all relevant times, Premier employed Helton and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

156.    Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or his employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or his reasonable attorney's fees and costs.

157.    Accordingly, Helton and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

### COUNT IV
### FAILURE TO PAY OVERTIME WAGES
### (NEVADA CLASS MEMBERS)

158.    Helton brings her failure to pay overtime claim as a class action on behalf of herself and the other Nevada Class Members under Nevada law and pursuant to Fed. R. Civ P 23.

159.     Helton has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

160.    At all relevant times, Premier was subject to Nevada law because Premier was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

161.    At all relevant times, Premier employed Helton and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

162.    Nevada law requires that employers, such as Premier, pay employees, such as Helton and the Nevada Class Members at least 1.5 times their regular rate of pay for all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

163.    Helton and the Nevada Class Members have been deprived of their overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek as a direct and proximate result of Premier's pre/post shift off the clock policy and bonus pay scheme.

164.    Premier regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Helton and the Nevada Class Members.

165.    Through this unlawful course of conduct, Premier has deprived and continues to deprive Helton and the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

166.    Premier's actions were willfully oppressive, fraudulent and malicious, entitling Helton and the Nevada Class Members to punitive damages.

167.    Premier's violations were intentional.

168.    In accordance with NRS 608.140, demand has been made to Premier for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

169.    Accordingly, Helton and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* N.R.S. § 608.005 *et seq.*

### COUNT V
### FAILURE TO PAY ALL WAGES UPON TERMINATION
### (NEVADA CLASS)

170.    Helton brings her failure to timely pay wages claim as a class action on behalf of herself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

171.    Helton has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

172.    At all relevant times, Premier was subject to Nevada law because Premier was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

173.    At all relevant times, Premier employed Helton and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

174.    When an employer, such as Premier, terminates an employee, such as Helton or the Nevada Class Members, their wages and compensation earned but unpaid at the moment of discharge become due and payable immediately and become due and payable to a quitting or resigning employee within 7 days or the next regular payday. Nev. Rev. Stat. §§ 608.020 and 608.030.

175.    Employers that do not pay discharged employees all earned wage "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" and pay quitting or resigning employees "on the day the wages or compensation is due" are subject to a penalty equivalent to "the wages or compensation of the employee at the same rate from the day the employee resigned, quit or was discharged or placed on nonworking status until paid or for 30 days, whichever is less." Nev. Rev. Stat. 608.040(1)(a-b).

176.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." Nev. Rev. Stat. § 608.050.

177.    By failing to pay Helton and the Nevada Class Members for all hours worked (including minimum wages, regular wages, and/or overtime wages owed) at the required rates based on all remuneration, in violation of Nevada law, Premier has failed to timely pay all wages due and owing to Helton and the Nevada Class Members who have separated their employment.

178.    Premier's violations were intentional.

179.    In accordance with NRS 608.140, demand has been made to Premier for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

180.    Helton and the Nevada Class Members who are no longer employed by Premier, are entitled to recover an additional 30 days' wages under NRS 608.050, plus costs, interest, and attorneys'

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

fees, as provided by Nevada law, and all other appropriate relief under Nevada law including, but not limited to all available damages and penalties.

### JURY DEMAND

181.    Helton demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Helton, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Helton and her counsel to represent the interests of the Hourly Employees;

d.    An Order finding Premier liable to Helton and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

e.    An Order finding Premier liable to Helton and the Hourly Employees for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f.    A Judgment against Premier awarding Helton and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

g.      An Order awarding attorney's fees, costs, and expenses;

h.      Pre- and post-judgment interest at the highest applicable rates; and

i.      Such other and further relief as may be necessary and appropriate.

Dated: December 31, 2025                    Respectfully submitted,

                                            **RODRIGUEZ LAW OFFICES, P.C.**

                                            By: _/s/ Esther Rodriguez_
                                            Esther C. Rodriguez
                                            Nevada State Bar No. 006473
                                            10161 Park Run Drive, Suite 150
                                            Las Vegas, Nevada 89145
                                            Tel: (702) 320-8400; Fax: (702) 320-8401
                                            info@rodriguezlaw.com

                                            Kathryn Penick*
                                            TX Bar No. 24116890
                                            **JOSEPHSON DUNLAP LLP**
                                            11 Greenway Plaza, Suite 3050
                                            Houston, Texas 77046
                                            Tel: (713) 352-1100; Fax: (713) 352-3300
                                            kpenick@mybackwages.com

                                            *Pro hac vice application forthcoming*

                                            **ATTORNEYS FOR HELTON &
                                            THE HOURLY EMPLOYEES**

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Helton v. Premier Magnesia, LLC*

# EXHIBIT 1

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Melissa Dawn Helton

1.  I hereby consent to make a claim against Premier Magnesia LLC to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of any agreements concerning settlement, attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against Premier Magnesia LLC.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Melissa Dawn Helton (Nov 15, 2025 10:01:19 PST)     Date Signed: Nov 15, 2025